**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Gerald Botha,                                    ) No. CV 12-8037-PCT-JAT
                                                 )
              Plaintiff,                         ) **ORDER**
                                                 )
vs.                                              )
                                                 )
                                                 )
Wright Medical Technology, Inc.; Wright)
Medical Group, Inc.,                             )
                                                 )
              Defendants.                        )
                                                 )
_____)

Pending before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 10). The Motion seeks to dismiss some, but not all, of Plaintiff's claims. The Court now rules on the Motion.

**I.    BACKGROUND**

Plaintiff Gerald Botha brought this product liability suit against Defendants Wright Medical Technology Incorporated and Wright Medical Group Incorporated, alleging various claims that arose from what Plaintiff alleges was a defective Wright Medical ProFemur Total Hip System (the "Device"), which Plaintiff further alleges was "designed, manufactured, tested, labeled, marketed, distributed and/or sold" by Defendants. Doc. 1 at 3.

According to the Complaint, Plaintiff's experience with the Device has proceeded as follows. The Device was implanted in Plaintiff on August 4, 2009 during a left total hip replacement procedure. *Id.* at ¶¶ 13-14. Nearly two years later, on June 30, 2011, a portion

of the Device implanted in Plaintiff failed, causing Plaintiff excruciating pain. *Id.* The next day, Plaintiff underwent revision surgery to remove the fractured fragments of the Device and have a Stryker Restoration Revision Modular Hip System implanted. *Id.* at ¶ 15. As a result of the Device's failure, Plaintiff alleges that he has "suffered severe physical and mental pain and anguish, disability and inconvenience, incurred substantial hospital, medical and rehabilitation expenses, loss of ability to work, and loss of ability to enjoy life, and will continue to suffer these losses in the future." *Id.* at ¶ 17. Plaintiff further alleges that he could not have reasonably discovered any problems with the Device until he underwent revision surgery. *Id.* at ¶ 18.

The Device itself is comprised of three separate components that are assembled during surgery: a femoral head, a modular neck, and a femoral stem. *Id.* at ¶ 24. Each component is available in multiple sizes, and the modular nature of the Device allows it to be customized to the unique anatomy of each patient. *Id.* However, this feature of the Device also can contribute to higher levels of corrosion, wear, fretting, and fatigue at the interfaces between the modular components. *Id.* at ¶ 27. Fretting, which is "a wear mechanism that occurs at low amplitude between two mechanically joined parts under load," is particularly problematic in modular devices because "it is almost impossible to prevent." *Id.* at ¶ 27-28. Various design characteristics may affect the amount of fretting, including "neck diameter, neck length, the material with which the neck is made, the method of assembly required, and fabrication tolerance of the joined parts." *Id.* at ¶ 29. With regard to the material chosen for the neck, studies have shown that those made from titanium "are more likely to suffer fretting corrosion and fatigue fracture than those made from cobalt-chromium." *Id.* at ¶ 30.

The particular modular neck that failed in Plaintiff's Device was made of titanium. *Id.* at ¶ 25. However, "just weeks after" Plaintiff was implanted with the Device, Defendants changed the material of the modular neck used in the Device from titanium to a cobalt-chrome alloy. *Id.* at ¶ 33. Plaintiff alleges that, despite this change to the Device, Defendants "implemented no corrective action in the form of a recall or even an announcement or warning to the medical community or to the public at large concerning its

1    decision." *Id.* at ¶ 34.  Nevertheless, Plaintiff further alleges that Defendants "were aware,

2    or should have been aware, of the danger of fatigue fracture and failure risks inherent in the

3    titanium ProFemur modular femoral neck adapters generally."  *Id.* at ¶ 35.  Despite this

4    alleged knowledge of problems with the Device, Defendants allegedly "have consistently

5    underreported and withheld information as to the propensity of the Device to fail, [have]

6    intentionally misled the FDA by underreporting adverse event reports and withholding

7    information showing the propensity of the Device to fail, and [have] intentionally

8    misrepresented the efficacy and safety of the Device to the medical community, patients and

9    the public at large."  *Id.* at ¶ 41.

10         In his Complaint, Plaintiff states the following eight claims for relief: Count I -

11   Negligence; Count II - Strict Liability - Design Defect; Count III - Strict Liability -

12   Manufacturing Defect; Count IV - Strict Liability - Failure to Warn; Count V - Breach of

13   Express Warranty; Count VI - Breach of Implied Warranty of Fitness;[1] Count VII - Negligent

14   Misrepresentation; and Count VIII - Fraudulent Misrepresentation.  Plaintiffs seek general

15   damages, special damages, and punitive damages, in addition to various costs.  *Id.* at 21.

16   Defendants have moved under Rule 12(b)(6) to dismiss Counts VI, VII, and VIII, in addition

17   to Plaintiff's request for punitive damages.  The Court now rules on the motion.

18   **II.   LEGAL STANDARDS**

19         **A.    Pleading Standard under Rule 8(a)**

20         The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two

21   reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a

22   cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

23   1990).

24         To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the

25   requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires a "short and

26

27         [1] In the Complaint, this count is incorrectly labeled as "Count V - Breach of Implied
     Warranty of Fitness."  Doc. 1 at 17.  Because it is the sixth count in the Complaint, the Court
28   will refer in this Order to this count as "Count VI."

plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*,

234 F.3d 428, 435 (9th Cir. 2000).  Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B.    Heightened Pleading Standard under Rule 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  It thus "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). "[I]n order for a complaint to allege fraud with the requisite particularity, 'a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.'" *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)) (footnote omitted).

Furthermore, there may be cases where fraud is not an essential element of a claim, but where the plaintiff has nevertheless "allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  In such cases, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103-04.  In other cases where fraud is not an essential element of a claim and the plaintiff has alleged both fraudulent and non-fraudulent conduct, "only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).  Allegations of non-fraudulent conduct need

satisfy only the ordinary notice pleading standards of Rule 8(a)."  *Id.* at 1105.  Finally, "dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect."  *Id.* at 1108.

## III.   ANALYSIS

### A.   Plaintiff's Breach of Implied Warranty Claim

Defendants argue that Plaintiff's Breach of Implied Warranty claim (Count VI of the Complaint) must be dismissed because, under Arizona law, it merges with Plaintiff's strict liability claims (Counts II, III, and IV).  Indeed, "in Arizona, when a complaint alleges product liability claims under theories of both breach of implied warranties and strict liability, those theories merge: 'the theory of liability under implied warranty has been merged into the doctrine of strict liability in tort, so that it is on this latter doctrine that the plaintiff's claim must stand or fall.'"  *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1103 (D. Ariz. 2003) (quoting *Scheller v. Wilson Certified Foods, Inc.*, 559 P.2d 1074, 1076 (Ariz. Ct. App. 1977)).  In his response, Plaintiff does not contend otherwise.  The Court will therefore dismiss Plaintiff's Breach of Implied Warranty claim with prejudice.

### B.   Plaintiff's Negligent Misrepresentation and Fraudulent Misrepresentation Claims

Defendants also argue that both of Plaintiff's misrepresentation claims (Counts VII and VIII) are subject to the heightened pleading standard of Rule 9(b) and that Plaintiff has failed to plead either claim with sufficient particularity to meet that standard.  The Court agrees with Defendants that Plaintiff's Complaint fails to include "the who, what, when, where, and how" of Defendants' alleged fraudulent misconduct.  *See Vess*, 317 F.3d at 1106. Instead, Plaintiff simply relies on vague assertions that "at all relevant times" Defendants "were aware, or should have been aware," of various risks and problems associated with Defendants' femoral neck adapter product.  *See, e.g.*, Doc. 1 at ¶¶ 33-35, 40-41, 55.  Plaintiff further alleges that Defendants, again "at all relevant times, . . . intentionally made material misrepresentations," *id.* at ¶ 55, and "consistently underreported and withheld information

as to the propensity of the [product] to fail."[2]  *Id.* at ¶ 41.  In light of these alleged misrepresentations and omissions, Plaintiff further alleges that Defendants "acted with gross negligence and willful and wanton disregard for the safety of the general public and the Plaintiff in knowingly and intentionally continuing to market, promote and sell the [product] . . . so as to maximize its sales and profits."  *Id.* at ¶ 96.

However, none of these allegations identifies any specific statements or omissions, let alone what might have been false or misleading about them.  Plaintiff also fails to identify with sufficient factual specificity who made any misleading statements, and when and where they were made.  Though Plaintiff gives somewhat more detailed factual information with regard to Defendants' decision to switch from a titanium product to one made of cobalt chrome, *id.* at ¶ 33-34, Plaintiff does not state with the required factual detail why this decision and Defendants' actions related to it were fraudulent.  The same is true of Plaintiff's description of Defendants' alleged "kickback" scheme, which appears only in Plaintiff's response and not in the Complaint itself.  *See* Doc. 13 at 6.  Hence, the allegations of fraudulent conduct in Plaintiff's Complaint do not meet Rule 9(b)'s heightened standard.[3]

These inadequate pleadings are clearly problematic with regard to Plaintiff's claim for fraudulent misrepresentation, which is subject to the requirements of Rule 9(b) because

---

[2] Some of Plaintiff's allegations of fraudulent conduct describe statements or omissions that Defendants directed toward the FDA, rather than toward Plaintiff or the medical community in general.  *See, e.g.*, Doc. 1 at ¶¶ 41, 42, 45 & 53.  However, to the extent that Plaintiff claims such "fraud on the FDA," those claims are preempted by federal law, *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 353 (2001), and therefore would require dismissal even if they met the pleading standard of Rule 9(b).

[3] Plaintiff also states that, though he believes his Complaint meets the required pleading standards, he "intends to conduct discovery to substantiate in more specific detail the foundation of his allegations."  Doc. 13 at 6.  However, "since the purpose of Rule 9(b)'s heightened pleading requirement is to protect a defendant from the reputational harm inherent in fraud allegations," Plaintiff will not be permitted "to conduct a discovery fishing expedition before properly stating any fraud-based claim."  *Reiniger v. W.L. Gore & Assocs., Inc.*, No. CV-09-8185-PCT-PGR, 2010 WL 1948588, at *3 (D. Ariz. May 12, 2010) (citing *Vess*, 317 F.3d at 1104).

it includes fraud as a necessary element.  *See Carrel v. Lux*, 420 P.2d 564, 568 (Ariz. 1966) (listing the elements necessary to establish fraudulent misrepresentation in Arizona). Therefore, the Court will dismiss Count VIII of the Complaint.  Further, though Plaintiff's allegations as they now stand fall far short of the Rule 9(b) pleading standard, the Court cannot say that it is not at all possible that Plaintiff can correct the defect.  *See Vess*, 317 F.3d at 1108.  Thus, the Court will grant Plaintiff leave to amend his fraudulent misrepresentation claim.

On the other hand, under Arizona law "[n]egligent misrepresentation is a separate tort from that of fraud."  *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003) (citing *Pettay v. Ins. Mktg. Servs.*, 752 P.2d 18, 21 (Ariz. Ct. App. 1987)).  Negligent misrepresentation "is committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information."  *Id.* (citing *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987)).  Thus, because negligent misrepresentation does not include fraud as a necessary element, the Rule 9(b) standard only applies to Plaintiff's entire claim if it is "grounded in fraud."  *See Vess*, 317 F.3d at 1103-04. Otherwise, the Rule 9(b) standard does not apply to any allegations of non-fraudulent conduct.  *Id.* at 1104.

The Court finds that Plaintiff's negligent misrepresentation claim is subject to the requirements of Rule 9(b) because the basis of that claim is the same "unified course of fraudulent conduct" that Plaintiff relies on for his fraudulent misrepresentation claim.  *See id.*  That is, the conduct that Plaintiff alleges to be negligent is identical to the conduct that Plaintiff alleges elsewhere in the Complaint to be intentional and fraudulent. Plaintiff merely attempts to describe that conduct as negligent in support of one claim and fraudulent in support of another.  It is clear to the Court, however, that Plaintiff's characterization of the conduct in the Complaint, which includes several allegations of intentionally misleading statements, is more indicative of fraud than negligence.  Thus, the claim is "grounded in

fraud."  Because the Court has found that none of the allegations of this fraudulent unified course of conduct meet the requirements of Rule 9(b), Plaintiff's claim for negligent misrepresentation will also be dismissed with leave to amend.

### C.    Plaintiff's Request for Punitive Damages

Finally, Plaintiff requests punitive damages in the Complaint.  Defendants argue that Plaintiff did not properly plead this "claim" for punitive damages.  However, Plaintiff's request for punitive damages is not a separate claim in the Complaint, but rather is incorporated into Plaintiff's prayer for relief and is thus not tied to any specific claims.  Furthermore, the Court finds that the allegations in the Complaint are sufficient to support a reasonable inference that Defendants acted with the "evil mind" that is required to support an award of punitive damages in Arizona.  *See Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 679 (Ariz. 1986).  Thus, the Court will deny Defendants' motion to dismiss Plaintiff's prayer for punitive damages.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 10).  Plaintiff's claim of Breach of Implied Warranty (Count VI) is dismissed with prejudice.  Plaintiff's claims of Negligent Misrepresentation (Count VII) and Fraudulent Misrepresentation (Count VIII) are dismissed with leave to amend.  The motion is denied with respect to Plaintiff's request for punitive damages.

**IT IS FURTHER ORDERED** that Plaintiff shall have 14 days from the date of this Order to file an amended complaint.

DATED this 6th day of July, 2012.

James A. Teilborg
United States District Judge

- 9 -